CHARLES F. GARDNER & another *vs.* DAVID JOY.

A. asked B. what he would take for candles ; B. said he would take twenty one cents per pound ; A. said he would take one hundred boxes ; B. said the candles were not manufactured, but he would manufacture and deliver them in the .course of the summer : No written memorandum was made of this bargain. *Held,* that this was a contract for the sale of goods, within the statute of frauds — Rev. Sts. *c.* 74, § 4.

IN an action of assumpsit, the plaintiffs alleged, in the first count in their declaration, that the defendant, on the 20th of April 1843, in consideration that the plaintiffs then promised him to pay him twenty one cents per pound, for one hundred boxes of good merchantable sperm candles, each box to contain $33\frac{1}{3}$ pounds, when said candles should be manufactured by the defendant, and delivered to the plaintiffs, undertook and promised the plaintiffs, that he would manufacture and deliver to them one hundred boxes of such candles, each box of the weight aforesaid, and that the same should be manufactured and delivered to them in the summer following, viz. in the months of July and August then next ; that the plaintiffs were ready to receive and pay for said candles ; that they tendered the price thereof to the defendant, and demanded of him a delivery thereof ; and that he refused to manufacture and deliver them to the plaintiffs.

The plaintiffs' second count set out a bargain, on the same 20th of April 1843, by the plaintiffs with the defendant, to buy of him, and that he then sold to them, one hundred boxes of candles, (describing them, as in the first count,) to be delivered by the defendant during the summer following, to be paid for by the plaintiffs, on delivery thereof ; that the plaintiffs had always been ready to receive and pay for said can

dles, according to their said bargain ; yet that the defendant had refused to deliver said candles, or any part thereof, to the plaintiffs.

The trial was in the county of Nantucket, before *Hubbard*, J. who made the following report thereof : To sustain their action, the plaintiffs called Edward G. Dillingham, as a witness, who testified that he was present at a conversation between Gardner, one of the plaintiffs, and Joy, the defendant ; that Gardner asked Joy what he would take for candles, and he said twenty one cents ; and that Gardner said he would take one hundred boxes ; and the witness understood that the bargain was completed ; that the precise time for their delivery was not stated ; that Joy said they were not manufactured, but he should or would manufacture them and deliver them to him in the course of the summer.

The plaintiffs also called Nathaniel Ruggles, who testified that he was at the defendant's house in the autumn of 1843, and asked the defendant when the bargain was made between him and Gardner ; and that the defendant, on examining a memorandum book, said that some time in April 1843 he sold Gardner & Cottle (the plaintiffs) one hundred boxes of candles, to be delivered to them some time in the summer, at twenty one cents per pound.

The jury were instructed, that if they were satisfied that there was no note or memorandum in writing of the bargain, signed by the party to be charged thereby, the action could not be sustained upon the evidence, as the case was within the statute of frauds — Rev. Sts. *c.* 74, § 4 : That this was a contract for the sale and delivery of goods, and not for the manufacture and sale of goods ; and that it would have been a sufficient compliance with the contract, if the defendant had been ready and offered to deliver one hundred boxes of good merchantable sperm candles of $33\frac{1}{3}$ pounds to the box, though they had not been of his own manufacture. A verdict was returned for the defendant.

Judgment to be entered on the verdict if the said instruction was right ; otherwise, a new trial to be ordered.

*Coffin,* for the plaintiffs.

*Colby,* for the defendant.

SHAW, C. J. Difficult questions frequently arise under the clause, in the statute of frauds, (Rev. Sts. *c.* 74, § 4,) which provides that "no contract for the sale of any goods, wares or merchandize, for the price of fifty dollars or more, shall be good or valid, unless" (among things not material in this case) "some note or memorandum in writing of the bargain be made and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized." But the difficulty arises, not so much from any uncertainty in the rule, as from the infinitely various shades of different contracts. If it is a contract to sell and deliver goods whether they are then completed or not, it is within the statute. But if it is a contract to make and deliver an article or quantity of goods, it is not within the statute. *Spencer* v. *Cone,* 1 Met. 283. *Mixer* v. *Howarth,* 21 Pick. 205.

In the present case, the question as to the nature and terms of the contract depends on the testimony of one witness, who testified as follows : [Here the chief justice recited the testimony of Dillingham, as stated in the report of the trial.] The presiding judge instructed the jury, that if they were satisfied that there was no note or memorandum in writing, (a fact to be decided by them on the evidence,) the action could not be sustained, being within the statute of frauds.

The court are of opinion that this instruction was right. It was essentially a contract of sale. The inquiry was for the price of candles ; the quantity, price and terms of sale were fixed, and the mode in which they should be put up. The only reference to the fact, that they were not then made and ready for delivery, was in regard to the time at which they would be ready for delivery ; and the fact, that they were to be manufactured, was stated as an indication of the time of delivery, which was otherwise left uncertain. There was some question, whether Joy used the term *would* or *should* manufacture them in the course of the summer ; but the meaning, we think, is the same. Whether, after stipulating for the terms

of sale, except the time, the question was at what time they would be delivered, and he said, I *will* manufacture them, or *shall* manufacture them, in the course of the summer; either would be the annunciation of a fact, indicating and fixing the time of delivery. The case seems not to be distinguishable from that of *Garbutt* v. *Watson*, 5 Barn. & Ald. 613, where the contract by the plaintiffs, who were millers, was for the sale of one hundred sacks of flour, to be got ready in three weeks, the flour not being prepared at the time, so as to be capable of delivery. It was held to be a contract of sale, and within the statute.

*Judgment on the verdict.*